UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

HARRIER TECHNOLOGIES, INC.     :
                               :
                               :
v.                             :      CIV. NO. 3:12CV167 (WWE)
                               :
CPA GLOBAL LIMITED and         :
CPA GLOBAL NORTH AMERICA, LLC  :

### RULING REGARDING MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER [DOC. # 35]

Non-party Kenyon & Kenyon LLP, an intellectual property law firm, moves for an order quashing the subpoena served by defendants CPA Global Limited and CPA Global North America, or, in the alternative, moves for a protective order. [Doc. # 35]. Kenyon has provided the documents at issue for an *in camera review* along with a privilege log describing the nature of the documents. At issue are twelve documents, which Kenyon & Kenyon LLP argues are protected by the attorney-client privilege and/or the work product doctrine. For the reasons that follow, the motion to quash is DENIED and the motion for protective order is GRANTED IN PART AND DENIED IN PART.

Background

Plaintiff Harrier Technologies is a designer and developer of technology used in the oil industry, and defendants CPA Global Limited and CPA Global North America, LLC are a worldwide intellectual property management company that provides patent

renewal services. Plaintiff alleges that defendants failed to make timely annuity payments for a Harrier patent application filed in Saudi Arabia, leading to the permanent loss of the patent rights in that country. Defendants deny any wrongdoing. Non-party Kenyon & Kenyon LLP is an intellectual property law firm that for some period handled plaintiff's U.S. and foreign patent filings.

Legal Standard

The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance. United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996). The Court construes the privilege narrowly because it renders relevant information undiscoverable; we apply it "only where necessary to achieve its purpose." Fisher v. United States, 425 U.S. 391, 403 (1976); see In re Grand Jury Investigation, 399 F.3d 527, 531 (2d Cir. 2005). The burden of establishing the applicability of the privilege rests with the party invoking it. In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000); United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO, 119 F.3d 210, 214 (2d Cir. 1997).

The Court uses a three-pronged standard for determining the legitimacy of an attorney-client privilege claim. A party

invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice. In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007); Constr. Prods. Research, Inc., 73 F.3d at 473.

Again, the party asserting the privilege must establish the essential elements of the privilege. Constr. Prods. Research, Inc., 73 F.3d at 473 (citing United States v. Adlman, 68 F.3d 1495, 1499 (2d Cir. 1995)).

The work product protection, set forth in Federal Rule of Civil Procedure 26(b)(3)(A) provides that, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." "The work-product rule shields from disclosure materials prepared 'in anticipation of litigation' by a party, or the party's representative, absent a showing of substantial need." Adlman, 68 F.3d at 1501 (citing Fed.R.Civ.P. 26(b)(3)). "The purpose of the doctrine is to establish a zone of privacy for strategic litigation planning and to prevent one party from piggybacking on the adversary's preparation." Id. (citing see United States v. Nobles, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170,

45 L.Ed.2d 141 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."); Hickman v. Taylor, 329 U.S. 495, 516, 67 S.Ct. 385, 396, 91 L.Ed. 451 (1947) (Jackson, J., concurring) (work product rule intended to insure that one side does not "perform its functions ... on wits borrowed from the adversary"); Restatement of the Law Governing Lawyers, Chap. 5 at 1 (Tent. Draft No. 6 1993) ("the doctrine seeks to preserve a zone of privacy in which a lawyer can work free from intrusion by opposing counsel")).

As articulated in QBE Ins. Corp. v. Interstate Fire & Safety Equip. Co., Inc., No. 3:07cv1883(SRU), 2011 WL 692982, at *2 (D. Conn. Feb. 18, 2011),

> In determining whether the work-product doctrine applies, a court must undertake a two-step analysis. First, it must decide whether the sought "documents and tangible things" were "prepared in anticipation of litigation or for trial by or for another party or its representative." Fed.R.Civ.P. 26(b)(3)(A). The party asserting work-product protection bears the burden of proof on that step. If the party asserting work-product protection meets its burden, then the court moves to the second step of analysis, which examines whether the evidence is nonetheless discoverable. That requires the party seeking discovery to show that the documents and other tangible things are otherwise discoverable under Rule 26(b)(1) and that the party "cannot, without undue hardship, obtain their substantial equivalent by other means." Id.

Discussion

**Documents 8, 9, 10, 24, 25, 26**

Kenyon asserts an attorney-client privilege for Harrier with regard to documents marked 8, 9, 10, 24, 25, and 26. These documents are communications between Lee Miller, an executive of Harrier Technologies, and attorneys from Kenyon & Kenyon addressing concerns by Harrier that annuity payments on the Saudi patents had not been made, and resolving what appear to be payment disputes between Harrier and Kenyon. The Court finds that these documents do not satisfy the third requirement of the attorney-client test, in that they were not made for the purpose of obtaining or providing legal advice. Rather, Harrier was demanding a factual explanation of the alleged failure of Kenyon to perform certain business functions on behalf of Harrier, including filings and annuity payments. See, e.g., Urban Box Office Network, Inc. v. Interfase Managers, L.P., No. 01 Civ. 8854(LTS)(THK), 2006 WL 1004472, at *2 (S.D.N.Y. April 17, 2006) ("[T]he [attorney-client] privilege does not protect the client's knowledge of relevant facts, whether or not they were learned from his counsel, or facts learned by the attorney from independent sources.") (citing Baptiste v. Cushman & Wakefield, Inc., No. 03 Civ. 2102(RCC)(THK), 2004 WL 330235, at *1 (S.D.N.Y. Feb. 20, 2004)). The motion to quash is DENIED with regard to this category of documents.

5

**Documents 298-300**

Kenyon asserts an attorney-client and work product privilege for an internal memorandum circulated among Kenyon employees, dated September 25, 2010. By and large, this internal memorandum does not satisfy the first requirement of the attorney-client privilege test that the communication be between client and attorney. The references to information provided by the client make it clear that the client communications were not for the purposes of obtaining legal advice. The document is also not shielded by work product protection, as it was not prepared by attorneys in the course of providing Harrier legal representation. This internal memorandum reports a series of events related to the failure to pay the 2006 annuity on the Saudi Arabia patent; it does not convey legal analysis or opinions. See Itoba Ltd. v. LEP Group PLC, 930 F. Supp. 36, 43 (D. Conn. 1996) ("To the extent that an internal corporate investigation is made by management itself, there is no attorney-client privilege…and by the same token, no work product protection.") (citing In re Grand Jury Subpoena Dated Dec. 19, 1978, 599 F.2d 504, 510 (2d Cir. 1979)). As such, the document is not shielded by the work product protection.

**Document 301**

Kenyon asserts work product protection with regard to this internal memorandum, created sometime after August 25, 2009. The

6

document is a timeline of the work done by Kenyon on the Saudi Arabia patent from 2004 to August 25, 2009, with an emphasis on the time period in 2006 when Kenyon learned that the patent had lapsed due to non-payment of the annuity. As with the previous document, this memorandum was not prepared in the course of providing Harrier with representation, but rather was prepared as part of Kenyon's internal inquiry to determine why the annuity had not been paid.  The author of this document is identified elsewhere as the docket manager for Kenyon; she is apparently not an attorney. This document is not shielded by the work product protection.

**Documents 302-308**

Kenyon asserts work product protection for the documents marked 301 through 308. This group of documents includes e-mails circulated from August 21, 2006, through September 11, 2006, between Kenyon employees (all but one identified as non-attorneys) after learning that the Saudi patent had lapsed due to non-payment of the annuity. Kenyon's assertion of the work product protection is misplaced. Kenyon is not a party to this action, and the documents were not prepared as part of Kenyon's representation of Harrier in anticipation of litigation. Rather, these communications were part of the firm's own internal inquiry upon learning of the lapse of the patent.  Indeed, Kenyon did not convey these facts to Harrier, which remained

unaware of the patent lapse until 2009. Here, the Court finds that Kenyon has not met its burden that the documents at issue satisfy Fed.R.Civ.P. 26(b)(3)(A).

Finally, the Court partially accepts Kenyon's argument that the Notice of Deposition is overly broad and unduly burdensome in that the requests extend beyond the Saudi Arabian patent at issue in this case. As such, the motion for protective order is GRANTED IN PART, to limit the subpoena to documents and communications related to the 107' Application, as defined in the Notice of Deposition. The documents identified on the privilege log attached to the motion to quash as exhibit "B" shall be produced to the defendants within fourteen (14) days of this Order.

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Bridgeport this 14th day of December 2012.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE