UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HARRIER TECHNOLOGIES INC.,      :
     Plaintiff,                   :
                              :
v.                              :         3:12-cv-00167-WWE
                              :
CPA GLOBAL LIMITED,        :
KENYON & KENYON LLP,      :
     Defendants.          :

**<u>MEMORANDUM OF DECISION ON DEFENDANT KENYON & KENYON'S
MOTION TO DISMISS</u>**

This is an action by a patent holder, Harrier, against its patent management company, CPA, and its former intellectual property firm, Kenyon, for failure to make a timely 2006 annuity payment on behalf of Harrier for an oil-well pumping system patent in Saudi Arabia. Count I alleges breach of agreement by CPA; Count II alleges breach of fiduciary duty by Kenyon; and Count III alleges fraudulent concealment by Kenyon. Kenyon has moved to dismiss both counts against it. For the following reasons, Kenyon's motion to dismiss will be denied.

**<u>BACKGROUND</u>**

For purposes of a motion to dismiss, the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff.

Harrier has designed and developed a breakthrough oil-pumping technology for use in the petroleum industry and has protected that technology with a series of patent filings on a worldwide basis.

Harrier has used the services of Kenyon for years to prepare and file patent applications, both in the United States and in foreign countries. Harrier also used Kenyon to make annual annuity payments until this responsibility was transferred to CPA in 2006.

Kenyon was aware that the annuity for Harrier's Saudi patent application was due the first quarter of 2006 as evidenced by Kenyon's own docketing system.  CPA reminded Kenyon that the annuity was due, but Kenyon failed to pay the annuity during the first quarter of 2006, resulting in the lapse of the patent application.

In August 2006, Kenyon learned that the Saudi patent application had lapsed for failure to pay.  Kenyon failed to notify Harrier that the patent had lapsed, later asserted it was not responsible for the lapse, and hid from Harrier documents that implicated Kenyon.

The failure to pay the Saudi annuity caused the irrevocable loss of the underlying patent rights with no possibility of revival.  Accordingly, Harrier has sustained a substantial reduction in any potential share of the multi-million dollar artificial lift market in Saudi Arabia.

As part of the discovery process, CPA subpoenaed documents from Kenyon.  Kenyon produced some documents but refused to produce others, claiming that the withheld documents were protected under the attorney-client privilege and/or work product doctrines.  In order to prevent production of the requested documents and to prevent Harrier, its own client, from seeing the documents, Kenyon filed a motion to quash CPA's subpoena and for a protective order.

Kenyon's motion to quash was denied by Magistrate Judge Holly B. Fitzsimmons on December 14, 2012.  Upon review of the documents that Kenyon was ordered to produce, Harrier was shocked to learn that Kenyon knew as early as August 14, 2006, that Harrier's Saudi patent application had lapsed and never told Harrier.  In addition, Harrier learned that Kenyon's docket manager, Lorrie McArdle, specifically stated that Kenyon was responsible for making the annuity payment that was missed.  Harrier also learned that CPA had sent at least three reminders to Kenyon regarding the Saudi patent annuity deadline.

Not only did Kenyon conceal from Harrier in 2006 that its Saudi patent application had lapsed, but also, when Harrier finally learned in 2009 that the patent application had lapsed and asked Kenyon for help, Kenyon intentionally misled Harrier and feigned an investigation into why the application had lapsed, even though Kenyon knew that it was responsible.

Mr. Miller, President of Harrier, met with Mr. Loughnane, Managing Partner of Kenyon, in February 2011.  At the meeting, Mr. Loughnane specifically denied that Kenyon had any responsibility for the lapsed annuity.  Kenyon's misrepresentations continued at least until April 6, 2011, when Mr. Loughnane advised Harrier in writing that Kenyon assumed no responsibility for the missed payment.

Kenyon convinced Harrier that CPA had assumed complete responsibility for paying the 2006 annuity because Kenyon consistently and falsely asserted that responsibility for paying the annuity for the Saudi Patent was transferred to CPA in December 2005.

Based on Kenyon's failure to inform Harrier that its patent application had lapsed, its attempt to conceal documents from Harrier, and a false written denial of responsibility by its managing partner, Kenyon convinced Harrier to sign a release on May 26, 2011.  In exchange for forgiveness of attorneys' fees, Harrier signed an agreement with Kenyon releasing Kenyon from any and all liability by reason of work performed prior to the date of the agreement.  Harrier contends that it relied on Kenyon's misrepresentations that CPA had assumed complete responsibility for paying the 2006 annuity when it agreed to enter into the settlement agreement and release with Kenyon.  Harrier argues that the release is unenforceable because it was based completely on Kenyon's fraudulent concealment of the most critical facts.

**<u>DISCUSSION</u>**

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." <u>Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.</u>, 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. <u>Hishon v. King</u>, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

Kenyon argues that Harrier's second amended complaint fails to state a claim upon which relief may be granted (1) because Harrier's claims are time-barred by the applicable statute of limitations and (2) because Harrier has already released Kenyon from the asserted liability. Alternatively, Kenyon contends that Harrier's Count III should be dismissed because Connecticut common law does not recognize fraudulent concealment as an independent cause of action.

**Statute of Limitations**

Under Connecticut law, breach of fiduciary duty is governed by the three-year statute of limitations for tort actions. Conn. Gen. Stat. § 52-577; <u>Censor v. ASC Techs. of Conn., LLC</u>, 900 F. Supp. 2d 181, 215 (D. Conn. 2012). Ordinarily, "[w]hen conducting an analysis under § 52-577, the only facts material to the trial court's decision . . . are the date of the wrongful conduct alleged in the complaint and the date the action was filed." <u>Farnsworth v. O'Doherty</u>, 85

Conn. App. 145, 149-50 (2004).  However, here, Harrier alleges that Kenyon fraudulently concealed information that would have given Harrier knowledge that Kenyon had breached its fiduciary duty to Harrier.  Specifically, Kenyon never told Harrier that: (1) it knew about the patent lapse as early as August 2006; (2) it was responsible for paying the 2006 annuity when it became due on January 1, 2006, until May 1, 2006, when the responsibility was transferred to CPA; (3) it received at least three reminders that the 2006 annuity was due; and (4) its own docket manager admitted that Kenyon was responsible for paying the 2006 annuity.  Instead, Kenyon convinced Harrier that CPA had assumed complete responsibility for paying the 2006 annuity because Kenyon consistently and falsely asserted that responsibility for paying the annuity for the Saudi Patent was transferred to CPA in December 2005.  Harrier believed and relied on Kenyon's representations because Kenyon was Harrier's longtime legal counsel, and Harrier trusted the firm.  Indeed, Kenyon's misrepresentations continued at least until April 6, 2011, when Michael Loughnane, Kenyon's managing partner, advised Harrier that "Kenyon assumed no responsibility for payment of annuities" after "the transfer of responsibility of annuity payments from Kenyon to CPA in 2005 . . ."  2d Am. Compl. Ex. Q.  Accordingly, Harrier submits that the statute of limitations for Harrier's claims against Kenyon was tolled due to Kenyon's fraudulent concealment.

In order to constitute fraudulent concealment, a defendant must (1) have actual awareness of the facts necessary to establish the plaintiff's cause of action; (2) have intentionally concealed these facts from the plaintiff; and (3) have concealed the facts for the purpose of obtaining delay on the plaintiff's part in filing a complaint on their cause of action.  Falls Church Group, Ltd. v. Tyler, Cooper and Alcorn, LLP, 281 Conn. 84, 105 (2007) (citing Bartone v. Robert L. Day Co.,

232 Conn. 527, 532 (1995)).  Moreover, "when a defendant is sued by a person to whom it owes

a fiduciary duty and that person is trying to extend the limitations period, Connecticut law

requires that the burden shift to the defendant to prove that one of the three Bartone elements has

not been met."  Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 196 F.3d 409, 420

(1999).

     At this stage of the proceedings, Harrier has plausibly alleged that Kenyon intentionally

concealed information about its alleged breach of its fiduciary duty to Harrier for the purpose of

obtaining delay.  Nevertheless, in order for the statute of limitations to toll under § 52-595, the

plaintiff must be ignorant of the facts that the defendant has sought to conceal.  Id. at 427.

Accordingly, the viability of Harrier's claims against Kenyon depends on when Harrier learned

of the facts necessary to bring its cause of action.  See Dennany v. Knights of Columbus, 2011

WL 3490039 at *5 (D. Conn. 2011).

     Kenyon argues that Harrier had knowledge of the facts necessary to raise the claims at

issue no later than September 29, 2009–meaning the statute of limitations began to run at least by

that date.  Kenyon cites Exhibits C, D, and P to Harrier's Second Amended Complaint as

evidence of Harrier's knowledge.  Exhibit C contains correspondence between Kenyon and

Harrier, dated March 21 and 29, 2005, about *2005* annuity payments; it is unclear how this

evidence relates to Harrier's knowledge of a 2006 lapse in annuity payments.  Exhibit D is an

April 28, 2006 letter from CPA to Harrier explaining that CPA would assume responsibility for

renewal of patents from May 1, 2006, the inference being that Kenyon maintained responsibility

for payments until May 1, 2006.  Exhibit P is a September 29, 2009 email chain between Harrier

and Kenyon wherein Harrier asserts that the Saudi matter is fully the responsibility of Kenyon.

6

Harrier responds that when it finally learned in 2009 that its Saudi patent had lapsed, it asked Kenyon for help.  Not only did Kenyon decline to disclose that it knew of the lapse as early as August 14, 2006, but Kenyon intentionally misled Harrier and feigned an investigation into why the application had lapsed–even though Kenyon knew that its docket manager had already confirmed in writing that Kenyon was responsible for the failed annuity payment.  As discussed above, Kenyon continued to insist that its responsibility for the payment ended in December of 2005–despite the clear evidence that its responsibility lasted until May 1, 2006.

Harrier did not learn that Kenyon knew of the patent lapse in 2006 until Kenyon's motion to quash in this case was denied by Magistrate Judge Fitzsimmons.  Harrier also learned of Kenyon's docket manager's acknowledgment of responsibility upon review of the documents that Kenyon was ordered to produce.

Essentially, Harrier contends that its own law firm, Kenyon, convinced Harrier that Kenyon was not responsible for any lapse in payment by fraudulently concealing the true facts from its client.  Kenyon's misrepresentations continued at least until April 6, 2011, well within three years of the filing of Harrier's Second Amended Complaint on May 7, 2013.  Accepting Harrier's allegations as true and drawing all reasonable inferences in favor of the Harrier, the Court finds that the statute of limitations should not bar Harrier's claims at this stage.

**Release of Liability**

Kenyon next argues that Harrier has already released Kenyon from the liability asserted in this case.  Specifically, on May 31, 2011, in exchange for forgiveness of attorneys' fees, Harrier signed an agreement with Kenyon releasing Kenyon from any and all liability by reason of work performed prior to the date of the agreement.  Harrier responds that the release is not effective

because of Harrier's fraudulent concealment of critical facts.  Harrier contends that it relied on Kenyon's misrepresentations that CPA had assumed complete responsibility for paying the 2006 annuity when it agreed to enter into the settlement agreement and release with Kenyon.  <u>See Little Mountains Enterprises, Inc. v. Groom</u>, 141 Conn. App. 804, 812 (2013) ("Rescission of a contract is an appropriate remedy if there has been a material misrepresentation of fact upon which a party relied and which caused it to enter the contract.").

Kenyon argues that by May 2011, when Harrier signed the release, Harrier was aware of the all the facts relevant to its cause of action, including that Kenyon was handling annuities for Harrier until May 1, 2006.  However, as discussed above, Kenyon's misrepresentations continued at least until April 6, 2011, when Mr. Loughnane, Kenyon's managing partner, advised Harrier that "Kenyon assumed no responsibility for payment of annuities" after "the transfer of responsibility of annuity payments from Kenyon to CPA in 2005 . . ."  2d Am. Compl. Ex. Q. Moreover, Harrier argues that it did not learn the extent of Kenyon's misrepresentations and intentional concealment until 2012, when Kenyon was forced to produce documents under orders from this Court.

Essentially, Kenyon asks the Court to find that Harrier disbelieved Kenyon, its own law firm, whom Harrier hired to investigate the lapsed payments.  However, for purposes of a motion to dismiss, the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff.  Accordingly, at this stage, Harrier's allegations against Kenyon will not be dismissed because of the May 31, 2011 release.

**Fraudulent Concealment**

Count III of Harrier's complaint alleges fraudulent concealment against Kenyon, but

Kenyon argues that Connecticut does not recognize an independent cause of action for fraudulent concealment. Harrier responds that the tort of "fraudulent nondisclosure" does exist. See Bernard v. Gershman, 18 Conn. App. 652, 656 (1989) ("Nondisclosure may . . . amount to fraud when there is a failure to disclose known facts under circumstances that impose a duty to speak."). Fraudulent nondisclosure is simply a form of fraud. Id.

The essential elements of an action in fraud are: "(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." Miller v. Appleby, 183 Conn. 51, 54-55 (1981). Harrier's complaint easily satisfies all four elements. Moreover, Harrier has adequately identified the speaker, the location and timing of the statements, and the nature of the allegedly fraudulent statements in accordance with the heightened pleading standard of Rule 9(b). See Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993). Accordingly, Count III alleging fraud against Kenyon will not be dismissed for failure to state a claim.[1]

### CONCLUSION

For the foregoing reasons, Kenyon's motion to dismiss [Doc. # 89] is DENIED.

Dated this 30th day of April, 2014, at Bridgeport, Connecticut.


                    /s/Warren W. Eginton
                    WARREN W. EGINTON
                    SENIOR UNITED STATES DISTRICT JUDGE


---

[1]The Court is not persuaded that Count III's label of "fraudulent concealment" rather than "fraud" is material to the analysis.

9